UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Independent School District No. 283,  Civil No. 18-2446 (DWF/ECW)

Plaintiff,

v.  **AMENDED MEMORANDUM OPINION AND ORDER**

E.M.D.H., a minor, by and through her parents and next friends, L.H. and S.D.,

Defendants.

_____

Katharine Saphner, Esq., and Peter A. Martin, Esq., Knutson, Flynn & Deans, PA, counsel for Plaintiff.

Amy J. Goetz, Esq., and Andrea L. Jepsen, Esq., School Law Center, LLC, counsel for Defendants.
_____

# INTRODUCTION

This Memorandum Opinion and Order is amended only to correct an error on page 15 at paragraph 3 with respect to the date of the ALJ's Decision that is to be vacated. Specifically, paragraph 3 of the Order should read: "The ALJ's July 27, 2018 Decision is hereby **VACATED**." The Court will also direct the Clerk of Court to amend paragraph 3 of the Judgment accordingly.

In this action, Independent School District No. 283 (the "District") moves for judgment on the administrative record seeking reversal of a July 27, 2018 decision issued by an administrative law judge ("ALJ"). (Doc. No. 20.) The July Decision ordered that the IEP of a high-school student whose parents previously lodged a due process

complaint under the Individuals with Disabilities Education Act, 20 U.S.C. § 1400, *et seq.* ("IDEA"), be revised to include additional features and services. (*See* Doc. No. 1 ("Compl.") ¶ 2; Doc. No. 2 (the "July Decision").) In addition, Defendants E.M.D.H. (the "Student"), a minor, by and through her parents and next friends, L.H and S.D. (the "Parents"), move for judgment as a matter of law and to strike the Declaration of Peter Martin (Doc. No. 23). (Doc. No. 37.) For the reasons set forth below, the Court grants the District's motion on jurisdictional grounds, denies the Defendants' motions, and vacates the July Decision.

## BACKGROUND

Defendants assert that the Student has been denied her right to a free and appropriate education under the IDEA. In a March 16, 2018 hearing decision (the "March Decision"), the ALJ found the Student eligible for special education and ordered, among other things, that the District implement an IEP with certain substantive features. Specifically, the March Decision required the District to immediately change the Student's educational placement by providing her a free, appropriate public education ("FAPE") consisting of special education and related services, at public expense, until her high-school graduation. (*See* Civ. No. 18-935 ("*E.M.D.H. I*"), Doc. No. 2 (the "March Decision").) As part of the March Decision, the ALJ reached the following conclusions:

> 1. The School District failed to conduct an appropriate evaluation of Student when it did not complete required assessments and failed to reach appropriate conclusions about Student's eligibility. Parents are entitled to reimbursement for their [independent educational evaluation ("IEE")] as a matter of law.

2. Student is eligible for special education and related services under the IDEA because her condition meets the definition of serious emotional disturbance/emotional behavioral disorder (EBD) and other health impairment (OHI)/other health disabilities (OHD).

3. The School District failed to timely identify Student as a possible child with a disability when Student refused to consistently attend school during eighth grade as a result of her deteriorating mental health.

4. The School District denied Student a FAPE when it did not timely and appropriately identify and evaluate her, determine her eligible, and provide her with special education and related services designed to enable her to make educational progress appropriate in light of her circumstances. Student is entitled to services appropriate to address her loss of educational benefit, including her lack of credits toward graduating, and teaching her skills to cope effectively with her disabilities.

(*Id.* at 4-5.) The ALJ further ordered that:

1. Student is a child with a disability under the IDEA, and eligible for special education and related services delivered via an IEP reasonably calculated to enable her to make educational progress in light of her circumstances.

2. The IEP must be formulated and in place no later than April 16, 2018. The initial version of the IEP shall include academic and functional goals designed to assist Student in accessing the curriculum she is intellectually capable of, make progress toward graduation, transition into post-secondary activities, and to gradually move to a less restrictive environment. Goals, instruction, and services must, at a minimum, be designed to provide Student instruction about her disabilities, coping strategies, and recognizing triggers and early physiological signs of anxiety so that she can effectively implement coping strategies. Supplemental services must be provided to teachers and staff who work with Student to teach them about Student's disabilities, triggers of arousal, and the coping strategies Student must learn and use. The IEP must permit Student to work at her own pace, including requiring teachers to set time limits for tests and assignments with Student's input. The IEP must provide Student with a resource room or quiet and uncrowded place to go when she needs a break due to arousal. The IEP shall also include a placement in a program identical to the program currently provided by Beyond Risk Youth, but must include an increased level of instruction and services as determined

3

appropriate by the IEP team, and may permit Student to choose whether she participates in large group activities during the academic day.

      3.     Student's IEP team must meet at least quarterly, following the implementation of the initial version of the IEP, to evaluate Student's academic and functional progress, and consider placement changes. Any disagreements will be subject to dispute resolution options under state and federal law. These educational services must remain available to Student until she graduates from secondary school.

      4.     Dr. Sulik and Heather Lindstrom must be invited to all IEP team meetings for Student, and will be reimbursed by the School District at a reasonable, good faith, contracted rate between the School District and the providers.

      5.     The School District must reimburse Parents for the cost of the private program provided by Heather Lindstrom since January 5, 2018. Future payments for Lindstrom's services must be paid directly to Lindstrom, based on invoices provided by Lindstrom to the School District. All payments must be made within 30 calendar days of the School District's receipt of an invoice.

      6.     The School District must reimburse Parents $21,208.80 for the IEE activities of Dr. Sulik, Dr. Ziegler, Wendy Selnas [sic], and Heather Lindstrom. This amount includes the combined fees charged by Lindstrom for tutoring and assessments until January 5, 2018. Payment must be made within 30 calendar days of the date of this Order.

7.     The School District must, within 30 days of the date of this Order, reimburse Parents $2,430 for the assessment conducted by Dr. Reese in May, 2017.

8.     Parents are the prevailing party in this matter.

(*Id*. at 28-29.)

On April 4, 2018, the District brought an action in this Court, *E.M.D.H. I*, challenging the March Decision.[1] The District then moved to stay certain portions of the

---

1     A comprehensive factual background is found at *E.M.D.H. I*, Doc. No. 16.

March Decision. Defendants opposed the motion and asked the Court to order that the following additional services be part of the Student's IEP:

- expert and intensive behavioral support services;

- expert and intensive psychological and counseling services;

- consistent and increasing services without decrease; and

- letter grades.

(*E.M.D.H. I*, Doc. No. 21 at 12.) While Defendants argued for these additional components in their opposition to the District's motion for a stay, Defendants, notably, did not cross-appeal the March Decision to add these services.[2]

On April 10, 2018, the District convened the IEP team. (Doc. No. 19 (Administrative Record ("AR")) at 41.) Defendants, their attorney, and four private providers (including Lindstrom and Selnes) attended the meeting. (*Id.*) Proposals were

---

[2] On April 23, 2018, the Court stayed portions of the March Decision "insofar as it imposes any requirement on the District to expend public funds to pay for past or future private services." (*E.M.D.H. I*, Doc. No. 42 at 10-11.) The District's motion did not seek to stay the portion of the hearing decision that directly involves the Student's educational placement. (*Id.* at 2 n.2.) The Court did not address the additional remedies requested by Defendants. These remedies were not part of the motion before the Court, as Defendants did not cross-appeal the March Decision. Later, the parties filed cross-motions for judgment on the administrative record in *E.M.D.H. I*. The Court denied the District's motion and granted Defendants' motion in part. (*E.M.D.H. I*, Doc. No. 116.) In sum, the Court affirmed the ALJ's conclusions about eligibility and child-find obligations. In terms of remedies, the Court concluded that Defendants were entitled to reimbursement of the amounts they paid a private provider for a 2017 assessment and for past private services provided by Heather Lindstrom, but that the record did not support an award of prospective compensatory education in the form of payment for private service providers. (*Id.* at 24-26.) Both parties appealed to the Eighth Circuit Court of Appeals. (*E.M.D.H. I*, Doc. Nos. 118, 124.)

put forward by both the District and the Parents. For example, the District proposed three two-hour academic sessions per week, while Defendants proposed five three-hour sessions per week, plus private in-home behavioral therapy services, private mental health therapy, a private "community navigator," letter grades for PLATO credits, and goals related to Student spending less time in her bedroom, maintaining consistent sleep, and completing chores at home. (AR 44, 681-87.) The record shows that the IEP team considered Defendants' proposals. For example, the IEP team specifically discussed the five-day schedule versus the three-day schedule for academic sessions and decided that the five-day schedule might be "too fast" and that the three-day schedule was preferable to begin with and build up from. (AR 42.)

On April 13, 2018, the District sent a proposed IEP to Defendants (the "IEP"). (AR 66, 351.) Among other things, the IEP provided for the following:

- the Student to meet with a special education teacher at a public library to work on PLATO online curriculum three days per week for two hours each time;

- weekly conferences with a school social worker;

- regular meetings with a school psychologist;

- extended school year ("ESY") services weekly from June 11, 2018 until July 31, 2018;

(AR 1792-1795.) On April 16, 2018, the Parents gave their written consent to implement the IEP "as proposed." (AR 748-749.) On that same day, Defendants' attorney sent a letter to the District's attorney, acknowledging the Parents' consent, but also noted "insufficiency" of the IEP in the following areas: provision of behavior support services

proposed by Selnes; letter grades; psychological services and counseling supports; and consistent and increasing ESY services. (AR 762-63.)

On April 24, 2018, the parties began to implement the IEP. For example, on that day, Carey Hermanson, a licensed EBD teacher, began meeting with the Student at the public library for three two-hour sessions per week. (AR 328.) The record demonstrates that the Student earned high scores on PLATO assessments (AR 329), was motivated (AR 329-331), and, at least through June 26, 2018, spent more time working on PLATO than in the preceding several months, earning two academic credits (AR 350).

On May 15, 2018, the Parents initiated a second due process hearing, seeking to add features to the IEP, including:

- more frequent ESY services in 2018;
- private behavioral supports provided by Selnes;
- private community navigator services; and
- letter grades for online PLATO materials.

(AR 1645-1648.) Defendants requested the same ALJ from *E.M.D.H. I*, Hearing Officer James Mortenson, because of his familiarity with the "closely related" issues. (AR 1648.) The Minnesota Department of Education ("MDE") granted the request.

The District's attorney requested that the Chief Administrative Law Judge ("Chief ALJ") of the Minnesota Office of Administrative Hearings disqualify ALJ Mortenson, arguing that he had treated the District unfairly in *E.M.D.H. I*. (AR 1617-1629.) On May 2, 2018, while the request was pending, ALJ Mortenson held a pre-hearing conference, during which the ALJ proposed to hold the due process hearing on

July 10-12, 2018. (AR 1524, 1552.) The District's counsel told the ALJ that he was not available on those days because of a previously scheduled vacation abroad and, instead, proposed a hearing beginning on July 19, 2018. The ALJ denied the request. And when the District requested that the hearing time line be extended for good cause, the Parents objected, and the ALJ declined to find good cause, reasoning that another attorney could represent the District. Facing the prospect of being represented by an attorney lacking familiarity with *E.M.D.H. I*, the District sent the Chief ALJ a supplemental declaration in support of its disqualification request outlining the ALJ's adoption of an "onerous, prejudicial and fundamentally unfair" hearing schedule. (AR 1499-1504.) The Chief ALJ denied the disqualification request.

Also during the May 22, 2018 prehearing conference, the ALJ summarized the issues raised by Defendants as:

> Did the school district deny student a free, appropriate public education when the IEP had proposed in April of 2018:
>
> > (1) reduced the special education related services during the summer;
> > (2) failed to include behavioral supports;
> > (3) failed to include instruction and supports for accessing, benefitting from extracurricular and other non-academic activities as well as post-secondary transition; and,
> > (4) does not require the provision of letter grades for students who work in the PLATO online academic instruction.

(AR 1530.) When asked if this adequately framed the issues, counsel for the Parents answered "Yes." (*Id.*)

The District filed a motion for summary disposition, arguing that: (1) the appeal of *E.M.D.H. I* to this Court divested the ALJ of jurisdiction; (2) *res judicata* barred

8

consideration of the claims; (3) the IEP proposed and implemented by the District was reasonably calculated to provide the Student a FAPE; and (4) changing the District's grading methods is beyond the scope of the ALJ's authority. (AR 1440-1454.) On May 30, 2018, the District and the Parents and their attorney participated in a conference, during which the District agreed to provide ESY services during the summer of 2018 three days per week. On June 26, 2018, the ALJ denied the District's pending motion for summary judgment, explaining, in part, that he had jurisdiction over the second hearing because *E.M.D.H. I* concerned the March Decision, and the second hearing request was centered on the IEP, which did not yet exist in March 2018. In addition, the ALJ concluded that *res judicata* did not apply because the IEP "was not fully and completely dictated by the March 16 Order" and the parents were presenting a new claim about the IEP. (AR 1342-1343.)

On July 27, 2018, the ALJ issued the July Decision, holding that the District had denied the Student a FAPE. (Doc. No. 2 at 26.) The ALJ ordered that the IEP be immediately revised to include the following provisions for the Student:

> 1. The services of an EBD teacher to provide instruction to Student on her disabilities, coping strategies, and recognizing triggers and early physiological signs of anxiety so that she can effectively implement coping strategies. The EBD teacher will also provide Student with behavioral skills training to improve her executive functioning when under stress to meet behavioral goals. This instruction will be provided 5 times weekly for 90 minutes per session, and reviewed at the next quarterly IEP team meeting.
>
> 2. One-on-one academic instruction, with aid of an online curriculum platform such as PLATO, to earn academic credits while preparing to transition to a less segregated setting. This instruction will be

9

provided five times weekly for 90 minutes per session, and reviewed at the next quarterly IEP team meeting.

      3.     Postsecondary transition services from an appropriate service provider knowledgeable about the transition to college, able to assist Student in managing that transition, and preparing Student to self-advocate with regard to her needs upon her transition. This service provided two times monthly for 90 minutes per session, and reviewed at the next quarterly IEP team meeting.

      4.     Assistance from an appropriate service provider with nonacademic and extracurricular activities, and postsecondary activities related to employment, recreation and leisure, and community living skills. The service provider will also be knowledgeable about travel training and work with Student to move around the community and complete associated tasks independently. This service provided once weekly for 120 minutes per session, and reviewed at the next quarterly IEP team meeting.

      5.     Parent counseling and training to help Parents: understand Student's mental health issues; implement therapeutic recommendations; and follow Student's behavior skills development plans to meet her behavioral goals. This service provided once weekly for 60 minutes per session, and reviewed at the next quarterly IEP team meeting.

      6.     Training for school staff working with Student about school anxiety. Specifically, the training will inform staff about Student's disabilities, her triggers of arousal, avoiding triggers, and the coping strategies Student must use to make progress in the general education curriculum and when arousal occurs. This training will occur once quarterly (every three months) for the next year, for 60 minutes per session, beginning before the start of the 2018-19 school year.

      7.     The instruction and related services provided during breaks in programming lasting more than three days. The need for, and amount of, ESY will be reviewed and revised before the start of the 2019-20 school year.

      8.     Letter grades upon completion of all academic content.

(July Decision at 18-19.)

The District then brought the present appeal, seeking reversal of the July Decision. Both parties seek judgment in their favor as a matter of law.

## ANALYSIS

### I. Standard of Review

A motion for judgment on the record in an IDEA case is a request that a final judgment be issued in what is essentially a bench trial on a stipulated record. *Slama v. Indep. Sch. Dist. No. 2580*, 259 F. Supp. 2d 880, 882 (D. Minn. 2003). The reviewing Court makes its decision independently, based on a preponderance of the evidence, as to whether the IDEA was violated. *See* 20 U.S.C. § 1415(i)(2)(C); *Sneitzer v. Iowa Dep't of Educ.*, 796 F.3d 942, 948 (8th Cir. 2015). The Eighth Circuit has emphasized that this review is "not necessarily de novo," and the reviewing court must give "due weight" to the ALJ's decision, not substituting its judgment for that of the school officials. *See Sneitzer*, 796 F.3d at 948.

### II. Jurisdiction

As an initial matter, the Court addresses whether the ALJ lacked jurisdiction over the second hearing. The District argues that the Parents' appeal of the March Decision in *E.M.D.H. I* vested this Court with jurisdiction over the March Decision's conclusions on both eligibility and the proper provisions of the initial IEP, and therefore that the ALJ was divested of jurisdiction over those matters and could not revise the IEP. The Court agrees.

A special education due process hearing decision is "final" subject to the right to appeal the decision in federal district court. 34 C.F.R. §§ 300.514, 300.516. The district

courts have jurisdiction over the appeals. 24 C.F.R. § 300.516(d). "The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction in the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982).

The Court has carefully reviewed the issues presented in the second due-process hearing and compared them to those considered in the first due-process hearing and the resulting March Decision in *E.M.D.H. I*. The Court finds that requests in the second hearing were encompassed by the first due process hearing that resulted in the March Decision. Indeed, the request for letter grades, ESY, extracurricular and community activities, and private in-home behavioral services were all part of the testimony by Defendants' witnesses in the first due process hearing. In addition, during the first hearing, the ALJ explicitly asked the parties to include recommendations on the appropriate contents of the IEP in their closing briefs.[3] In the March Decision, the ALJ ordered the District to implement an IEP with a number of features and services, including but not limited to, the development of academic and functional goals designed to assist Student's progression toward graduation and post-secondary activities; services designed to provide Student instruction about her disabilities and coping strategies; supplemental services for teachers and staff; individualized pacing for tests and assignments; and the provision of a resource room. The IEP was also required to provide a program "identical" to that being provided by Heather Lindstrom from Beyond Risk

---

[3] The Parents acknowledge that the issues in their second hearing request were "closely related" to those litigated in the first hearing.

Youth, LLC, which included various services such as the design and implementation of a plan for the Student and private academic tutoring.

The District appealed, and asked the Court to stay portions of the March Decision.[4] In its opposition to the District's motion to stay, the Parents sought to include additional features to the IEP. However, Defendants did not cross-appeal the March Decision. The District then convened an IEP team, considered the Parents' various proposals, came up with its own proposal, and eventually the Parents gave written consent to implement the IEP. (AR 748-749.) At the same time, the Parents' attorney, while acknowledging the Parents' consent, claimed that the IEP was insufficient in four areas—the provision of behavior support services by Selnes, letter grades, psychological services and counseling supports, and consistent thrice-weekly ESY services. (AR 762-763.) On April 24, 2018, the IEP was implemented. Less than one month later, on May 15, 2018, the Parents initiated the second hearing that is the subject of this lawsuit, wherein they asked to add to the IEP more frequent ESY services during the summer, private behavioral supports provided by Selnes, private community navigator services, and letter grades.

The appeal of the March Decision in *E.M.D.H. I* vested the Court with jurisdiction over the March Decision, and the March Decision, in turn, encompassed the required contents of the Student's IEP. The issues presented in the second hearing relate directly

---

[4] In particular, Defendants asked the Court to stay any requirement that the District pay for private services.

to what Defendants perceive as the required contents of the IEP. Indeed, in the second hearing and this action, Defendants represent that the IEP proposed in April 2018 "could not possibly meet [Student's] needs." (Doc. No. 38 at 3.) Even so, Defendants consented to the IEP and soon after initiated a second due process hearing. Yet, Defendants acknowledge that the second due process hearing addressed services and components that should have been included in the IEP. Defendants submit that these additional services are separate and distinct from those at issue in *E.M.D.H. I*, namely because they were not asserted until *after* the IEP was created and because the March Decision only decided issues of eligibility and the basic contours of an initial IEP. However, as discussed above, the services that Defendants now request were addressed in the first hearing, and had Defendants wanted the IEP to specifically provide these services, the proper procedure would have been to file their own appeal of the March Decision to take issue with its conclusions and the scope of the order. Defendants did not do so.

Defendants' second hearing request is a request to supplement the IEP. However, the District's appeal of *E.M.D.H. I* to this Court divested the ALJ of jurisdiction over the March Decision and the provisions of the IEP. Therefore, the ALJ was not permitted to reexamine, supplement, or change the IEP. For this reason, the Court concludes that the July Decision is properly vacated. *See, e.g.*, *Dep't of Educ. of Hawaii v. Leo W.*,

226 F. Supp. 3d 1081, 1096-98 (D. Hawaii 2016) (vacating a hearing officer's decision on an issue over which he lacked jurisdiction).[5]

## ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The District's Motion for Judgment on the Administrative Record (Doc. No. [20]) is **GRANTED** on jurisdictional grounds.

2. Defendants' Motion for Judgment on the Record and to Strike (Doc. No. [37]) is **DENIED**.

3. The ALJ's July 27, 2018 Decision is hereby **VACATED**.

4. The Court directs the Clerk of Court to amend paragraph 3 of the Judgment (Doc. No. [53]) accordingly.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: June 5, 2019
s/Donovan W. Frank
DONOVAN W. FRANK
United States District Judge

---

[5] The Court does not address the parties' additional arguments, but notes that the District's allegations of bias by the ALJ have some merit. While not relevant to the rulings herein, the Court is particularly troubled by the ALJ's denial of the District's request for a one-week extension of the hearing to accommodate the attorney for the District. Forcing the District to find substitute counsel who was unfamiliar with the case to represent the District at the hearing appears onerous and prejudicial. In thirty-four years in state and federal court, the undersigned has not scheduled a critical hearing so as to require a late substitution of counsel.